UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

POWERSCREEN USA, LLC                                                                    PLAINTIFF

V.                                                          CIVIL ACTION NO.
                                                              3:07–CV–699–H

S&L EQUIPMENT, INC.                                                                   DEFENDANT


TEREX CORPORATION                                                                      PLAINTIFF

V.                                                          CIVIL ACTION NO.
                                                              3:07–CV–700–H

S&L EQUIPMENT, INC.                                                                   DEFENDANT

### MEMORANDUM OPINION AND ORDER

Plaintiffs Powerscreen, USA, LLC ("Powerscreen") and Terex Corporation ("Terex") have each brought separate actions against Defendant S&L Equipment, alleging that Defendant breached its separate bilateral contracts with Powerscreen and Terex, respectively. Currently pending before the Court are Defendant's motions to transfer venue in each action, as well as Defendant's unopposed motions to consolidate both actions into a single case.

For the reasons discussed below, the Court finds that the Western District of Kentucky is an appropriate forum for both cases. The Court will also grant Defendant's unopposed motions to consolidate these actions.

I.

Terex is a Delaware corporation with its principal place of business in Connecticut. It is engaged in, among other things, the production of heavy equipment for construction and mining. Powerscreen, a Kentucky limited liability company with its principal place of business in

Kentucky, is a manufacturer of equipment for, among other things, the mining, quarrying, and construction industries. Terex acquired Powerscreen in 1999. S&L Equipment is an Arizona limited liability company with its principal place of business in Arizona, and is a distributor of equipment and parts made by Terex and Powerscreen.

The Court notes at the outset that the precise relationship between Terex, Powerscreen, and Defendant remains somewhat obscure. For example, it appears that the transactions forming the basis of Terex's claim against Defendant are distinct from those forming the basis of Powerscreen's claim against Defendant. However, the parties' disclosures made pursuant to Fed. R. Civ. P. 26 are virtually identical, and as just noted, Terex is the parent company of Powerscreen. Furthermore, it may be that Powerscreen was the conduit for some of the goods shipped to Defendant from Terex. In sum, the degree to which the Terex-Defendant relationship and the Powerscreen-Defendant relationship overlap is not made clear by the record, but as Terex and Powerscreen believed it necessary to file separate actions against Defendant, the Court will conduct separate analyses for each.[1]

During the period at issue in this case, Defendant sent purchase orders to both Terex and Powerscreen offering to buy equipment from the latter and parts from both. These purchase orders contained clauses which read as follows:

> Venue and Governing law: All disputes, disagreements, or lawsuits between the parties to this agreement shall be governed, interpreted and enforced in accordance with the laws of the State of Arizona. In the event litigation is commenced against S&L Equipment, Inc. the parties hereto agree the venue for any such action will be Phoenix, Arizona and all objections to personal and subject matter jurisdiction and venue are waived.

---

[1] In an effort to distinguish between its analysis of the facts in the two cases, the Court will refer to "the Powerscreen case" and "the Terex case."

Defendant's Powerscreen Motion to Transfer Venue, Exhibit 5.[2] In response to these purchase orders, Terex and Powerscreen shipped the requested items to Defendant. Sent with or shortly after these shipments of goods were invoices which read as follows:

> **17. Construction and Severability**. This terms of sale agreement constitutes the entire agreement between the parties regarding the subject matter hereto and shall be construed and enforced in accordance with the laws of the State of Kentucky.
>
> **18. Jurisdiction**. The parties agree that the proper and exclusive forum and venue in all legal actions brought to enforce or construe any of the provisions of this sales order agreement shall be in the United States District Court for the Western District of Kentucky, at Louisville or, if federal jurisdiction is lacking in such legal action, in the Circuit Court, Jefferson County, Louisville, Kentucky.

Terex's Response, Exhibit C; Powerscreen's Response, Exhibit C.

In a critical distinction between Terex's and Powerscreen's relationships with Defendant, the former is also subject to the terms of a 2004 Distributorship Agreement into which Defendant entered with B.L. Pegson USA, Inc. ("Pegson"), a Kentucky limited liability company and predecessor in interest to Terex. Under the terms of this agreement, Defendant was deemed an "exclusive distributor of [Pegson's] Products" in the state of Arizona. Terex's Response, Exhibit B, at ¶ 2.1. The exclusivity of the arrangement appears only to have constrained Defendant's freedom of action, as Pegson remained "free to sell, rent, lease or otherwise convey Products within the [state of Arizona]." *Id.* This Distributorship Agreement, which predated the exchanges of purchase orders and invoices giving rise to Terex's claim, provides as follows:

> This Agreement and any purchase and sale transaction arising pursuant hereto shall be governed by and construed in accordance with the internal laws of the State of Kentucky without giving effect to the conflicts of laws principles thereof,

---

[2]To distinguish between Defendant's filings in the two cases, the Court will hereinafter refer to "Defendant's [name of Plaintiff] Motion" and "Defendant's [name of Plaintiff] Reply." Where, as is often the case, the same argument is repeated verbatim in filings in both cases, the Court will refer to, for example, "Defendant's Motions" or "Defendant's Replies."

and the parties hereby agree to submit any disputes arising under this Agreement to the exclusive jurisdiction of federal or state courts within the State of Kentucky, and to submit to the personal jurisdiction of such courts for any such disputes.

Terex's Response, Exhibit B, at ¶ 13.2. Additionally, a Security Agreement appended to the Distributorship Agreement contained the following language:

<u>Service of Process; Consent to Jurisdiction; Etc.</u> As part of the consideration for Seller's executing the Agreement, Buyer consents to the jurisdiction of any local, state or federal court located within the State of Kentucky, and waives personal service of any and all process upon the Buyer herein, and consents that all such service of process may be made by certified or registered mail directed to the Buyer at the address designated below and service so made shall be deemed to be completed three (3) calendar days after the same shall have been posted as aforesaid. Buyer waives any objection to venue of any action instituted hereunder.

Terex's Response, Exhibit B at Exhibit A–Security Agreement, ¶ 10(a). And finally, the "Terms & Conditions of Sale" appended to the Distributorship Agreement contained the following language:

**17. Construction and Severability**. This terms of sale agreement constitutes the entire agreement between the parties regarding the subject matter hereto and shall be construed and enforced in accordance with the laws of the State of Kentucky.

**18. Jurisdiction**. The parties agree that the proper and exclusive forum and venue in all legal actions brought to enforce or construe any of the provisions of this sales order agreement shall be in the United States District Court for the Western District of Kentucky, at Louisville or, if federal jurisdiction is lacking in such legal action, in the Circuit Court, Jefferson County, Louisville, Kentucky.

Terex's Response, Exhibit B at Exhibit B–Terms & Conditions of Sale, ¶¶ 17–18.

In their separate lawsuits, both Terex and Powerscreen claim that Defendant breached its obligation to pay for the parts and equipment it ordered.[3] Each Plaintiff asserts that this Court

---

[3] Terex claims a breach as to "approximately 273 invoices dating from March 13, 2006, to July 31, 2007," Terex's Response at ¶ 8, and seeks payment of $443,981.52. Powerscreen claims a breach as to "approximately 250 invoices dating from March 13, 2006 to July 26, 2007," Powerscreen's Response at ¶ 8, and seeks payment of

4

may exercise diversity jurisdiction over its case pursuant to 28 U.S.C. § 1332, and that venue is proper pursuant to 28 U.S.C. § 1391. In both cases, however, Defendant says that venue is improper in the Western District of Kentucky, and that this Court should transfer both cases to the District of Arizona pursuant to 28 U.S.C. § 1406. In the alternative, Defendant argues that even if venue is proper in the Western District of Kentucky, the cases should nevertheless be transferred to the District of Arizona pursuant to 28 U.S.C. § 1404. And though they are styled as challenges solely to the propriety of venue, Defendant's motions also assert that this Court lacks personal jurisdiction over it. Defendant's Motions to Transfer Venue at 3. Therefore the Court will consider whether personal jurisdiction and venue are appropriate in each case. *See generally* 14D CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FED. PRACTICE & PROCEDURE § 3801 ("Personal jurisdiction and venue are closely related concepts . . . . But important distinctions exist").

II.

Both Powerscreen and Defendant assert that the forum selection clauses contained in the forms they sent to one another should dictate the venue and governing law for their dispute. Thus the Court must begin by determining whether any of the forum selection clauses exchanged by the parties should be construed as binding upon them.

A.

The facts of the Powerscreen case may be viewed in a number of different ways, all of which lead to the same result. The fact that Powerscreen conditioned its acceptance of Defendant's purchase order upon Defendant's acceptance of additional and different terms likely

---

$191,789.91.

5

means that Powerscreen's acceptance was in fact not an acceptance at all, since:

> [a] definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, *unless acceptance is expressly made conditional on assent to the additional or different terms.*

Ky. Rev. Stat. § 355.2-207(1) (emphasis added).[4] Under this view, Powerscreen's shipment of the goods accompanied by invoices containing additional and different terms likely operated as rejections of Defendant's terms and counteroffers of Powerscreen's terms, which certainly would render Defendant's forum selection clause inoperative, and might do the same to Powerscreen's, leaving only the terms on which the writings of the parties agree, namely price and quantity, agreed upon by the parties.[5]

However, the Court notes that Defendant retained the goods shipped by Plaintiffs, which could indicate Defendant's acceptance of them and the terms and conditions upon which they were offered, since such an acceptance is deemed to occur when, after having had a reasonable opportunity to inspect the goods, the buyer fails to make an effective rejection of them. Ky. Rev. Stat. § 355.2-606. Such an interpretation might allow Powerscreen's forum selection clause to

---

[4]Defendant argues that "the contracts were formed and the terms complete before Powerscreen sent the invoices containing the Kentucky forum selection clause," since "Powerscreen sent its invoices after it shipped the goods, and usually after the goods had already been received by S&L." Defendant's Replies at 3. The Court views any time lag between Powerscreen's shipment of goods and its transmission of invoices as insufficiently sizeable to preclude the invoices from constituting "definite and seasonable . . . written confirmation[s] . . . sent within a reasonable time." Ky. Rev. Stat. § 355.2-207(1). Therefore the different and additional terms contained in the invoices are not deprived of their significance.

Additionally, Stephen Conlon's sworn statement regarding Defendant's "refusal to accept Kentucky as a forum for litigating any disputes" does not operate as a *de facto* Arizona forum selection clause, since even if such notification occurred, it would at best only operate to render *both* of the parties' dueling forum selection clauses inoperative pursuant to Ky. Rev. Stat. § 355.2-207(2).

[5]"Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such cases the terms of the particular contract consist of those terms on which the writings of the parties agree." Ky. Rev. Stat. § 355.2.207(3).

govern.

Thus it appears that either no forum selection clause governs the Powerscreen case, or that the Kentucky forum selection clause contained in Powerscreen's invoices governs it. At this time the Court finds it unnecessary to decide this issue, since as will next be explained, the Court may properly exercise personal jurisdiction over Defendant in the Powerscreen case even without a Kentucky forum selection clause. Likewise, venue would be appropriate in the Powerscreen case even without a Kentucky forum selection clause.[6] Therefore the same result would obtain under any interpretation.

B.

Where, as here, a federal court is sitting in diversity, "it may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so." *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998). Therefore the Court looks to whether Kentucky's long-arm statute, Ky. Rev. Stat. § 454.210, would allow for the exercise of personal jurisdiction in this case. Additionally, as this Court has noted in the past, while Kentucky's long-arm statute "has been interpreted to reach the limits of Due Process, this interpretation does not mean a court should ignore the precise language which the legislature has chosen to ensure that constitutional compliance." *Spectrum Scan, LLC v. AGM Cal.*, 519 F.Supp.2d 655, 657 (W.D. Ky. 2007) (internal citations omitted).

Kentucky's long-arm statute authorizes personal jurisdiction over, among others, "a person who acts directly or by an agent, as to a claim arising from the person's . . . [t]ransacting

---

[6] In this section the Court will only consider whether venue is appropriate in the Western District of Kentucky. The Court reserves for Section IV its consideration of whether it should exercise its discretion to transfer the Powerscreen case to Arizona pursuant to 28 U.S.C. § 1404..

7

any business in this Commonwealth." Ky. Rev. Stat. § 454.210(2)(a)(1). As a general matter, Due Process is certainly not offended by this Court's exercise of personal jurisdiction over Defendant pursuant to this statute, as Defendant has "purposefully directed" its activities toward Powerscreen, a Kentucky company, and therefore Defendant's "conduct and connection with [Kentucky] are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473–74 (1985) (internal citations omitted). Furthermore, Kentucky has a "manifest interest in providing its residents with a convenient forum for redressing interests inflicted by out-of-state actors," and in order to overcome the many justifications for this exercise of personal jurisdiction, Defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 473, 477 (internal citations omitted).[7]

With reference to the same principles that informed *Burger King*, the Sixth Circuit has divided the personal jurisdiction inquiry into three components:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

---

[7]Even where the exercise of personal jurisdiction does not offend Due Process, *Burger King* dictates that a court must still consider "whether the assertion of personal jurisdiction would comport with fair play and substantial justice." 471 U.S. at 477 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). In evaluating this question, courts "may evaluate the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)) (internal quotation marks omitted). Defendant asserts, albeit in the context of contesting the propriety of venue, that it will be unduly burdened by having to litigate this case in Kentucky. However as will be discussed further below, the extent of such burdens certainly does not rise to the level at which the "fair play and substantial justice" experienced by Defendant in Kentucky could be called into question.

*Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). Here, Defendant contacted Kentucky-headquartered Powerscreen with at least 250 purchase orders, which satisfies the "purposeful availment" prong. *Cf. Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 551 (6th Cir. 2007). Furthermore, Powerscreen's cause of action clearly arises from these purchase orders. *Cf. id.* at 553 (finding the "arising from" test satisfied where but for the existence of a contractual relationship between the parties, the alleged impropriety would not have occurred). Finally, though Defendant will undoubtedly experience certain inconveniences if forced to litigate in Kentucky, these inconveniences do not overcome what the Sixth Circuit has characterized as "an inference of reasonableness when the first two *Southern Machine* prongs are satisfied." *Id.* at 555.

      The Court finds *Burger King* and *Air Prods. & Controls* highly instructive on the question of the appropriateness of its exercise of personal jurisdiction over Defendant in the Powerscreen case. As in those cases, here Defendant "reached out" to a Kentucky company in an effort to purchase goods, thereby "purposefully deriving commercial benefit from his affiliations" in Kentucky. *Burger King*, 471 U.S. at 484. And far from being a one-time occurrence, this "reaching out" apparently occurred at least 250 times, aligning these facts with the "long-term franchise" arrangement in *Burger King* and the "continuing business relationship" in *Air Prods. & Controls*. Therefore the Court finds that the continuing relationship between Defendant and Powerscreen, established and continued at Defendant's urging, provides a sufficient basis upon which it may exercise personal jurisdiction over Defendant in the Powerscreen case, regardless of whether the Kentucky forum selection clause in Powerscreen's invoices is binding upon Defendant.

9

C.

Defendant makes two argument regarding the impropriety of venue in the Western District of Kentucky as to the Powerscreen case. First, Defendant asserts that its own Arizona forum selection clause should govern, an assertion the Court finds unsupported by the statutory contract law provisions discussed above. Second, Defendant asserts that the "center of gravity of the litigation" is located in Arizona, not the Western District of Kentucky, and therefore that Arizona is the proper venue for this case. Defendant's Powerscreen Reply at 6.

Of course "it is important not to conclude that venue is proper simply because the defendant is subject to personal jurisdiction," since "the laws relating to venue give added protection to defendants beyond those that are provided by the statutory and constitutional prerequisites of personal jurisdiction." 14D WRIGHT, MILLER & COOPER, FED. PRACTICE & PROCEDURE § 3801. Indeed, "the key to venue is that it is primarily a matter of choosing a convenient forum." *Id.* However, the text of 28 U.S.C. § 1391 has been explained as follows:

> The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as "substantial" activities took place in A, too. Indeed, district A should not be disqualified even if it is shown that the activities in B were more substantial, or even the most substantial. Any other approach would restore the pinpointing problem that created the difficulties under the now discarded "claim arose" standard. If the selected district's contacts are "substantial," it should make no difference that another's are more so, or the most so.

DAVID D. SIEGEL, COMMENTARY ON THE 1988 AND 1990 REVISIONS OF SECTION 1391, SUBDIVISION (A), CLAUSE (2), 28 U.S.C.A. § 1391. Thus the fact that more substantial activities took place in Arizona than in the Western District of Kentucky does not necessarily make venue improper in the latter. The critical inquiry is whether substantial activities took place in the Western District of Kentucky.

Without commingling its venue and personal jurisdiction analyses, the Court notes that as discussed in the preceding section, Defendant repeatedly engaged in commercial activity, albeit at a distance, in the Western District of Kentucky. Defendant contracted over and over again with a company headquartered in the Western District of Kentucky to purchase goods from it. Regardless of how many times that company's employees might have visited Defendant in Arizona, or whence the goods ordered by Defendant ultimately came, this ongoing commercial relationship seems sufficiently substantial to make venue appropriate here. *Cf., e.g., Steelcase, Inc. v. Mar-Mol Co.*, 210 F.Supp.2d 920, 936–37 (W.D. Mich. 2002) (finding that similar factors favored the plaintiff's chosen venue).

### III.

If this Court may properly exercise personal jurisdiction over Defendant and if venue will properly lie in this Court in the Terex case, it seemingly can only be because the forum selection clause appearing in the Distributorship Agreement and echoed in the invoices sent by Terex to Defendant is valid and enforceable. The record reveals no contacts with Kentucky by Defendant or by Terex that would otherwise support personal jurisdiction or venue in the Terex case.

As this Court has noted in the past, "[t]he requirement that a court have personal jurisdiction over a party is a waivable right . . . . It is well established that a party, voluntarily agreeing to a particular forum, submits himself to the personal jurisdiction of that forum." *A&W Rests., Inc. v. Cook Corp.*, 2006 WL 2850268, *3 (W.D. Ky. Oct. 2, 2006) (citing, *inter alia, Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006)) (internal citations omitted). As a preliminary matter, Defendant seemingly concedes that the forum

selection clause in the Distributorship Agreement is valid, in that Defendant's entire argument asserting that the Arizona forum selection clause contained in its purchase orders should govern proceeds from the premise that "the forum selection clause only applies to Terex, not Powerscreen." Defendant's Terex Reply at 2, 6. Indeed, Defendant's argument in favor of transferring the Terex case is at bottom predicated upon the notion that once the Court transfers the Powerscreen case, it would further judicial economy to transfer the Terex case along with it. *Id.* at 6. But despite this concession, the Court will consider whether there is "a strong showing that [the forum selection clause] should be set aside." *Preferred Capital*, 453 F.3d at 721 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

As noted above, this Court is sitting in diversity in this case. This raises the question of whether to apply state or federal law to the question of the forum selection clause's enforceability. *See Preferred Capital*, 453 F.3d at 721; *Security Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999). However, as was true of Ohio law in *Preferred Capital* and of Tennessee law in *Security Watch*, Kentucky law tracks federal law on the question of enforceability, rendering unnecessary any choice between the two. *Compare M/S Bremen*, 407 U.S. at 15 (holding that forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances") *with Prudential Res. Corp. v. Plunkett*, 583 S.W.2d 97, 99 (Ky. Ct. App. 1979) (adopting the principle that a forum selection clause "will be given effect unless it is unfair or unreasonable").

Therefore the Court must examine whether the forum selection clause in the Distributorship Agreement is fundamentally unfair or unreasonable. *A&W Rests.*, 2006 WL

2850268 at *3 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)). Such unfairness may exist where such clauses are a result of "fraud, undue influence, or overweening bargaining power," *M/S Bremen*, 407 U.S. at 12–13, or as noted by the American Law Institute in a passage to which both Kentucky and federal courts cite in support of their positions on this matter, where "for some reason the courts of the chosen state would be closed to the suit or would not handle it effectively or fairly . . . . [or where] the chosen state would be so seriously an inconvenient forum that to require the plaintiff to bring suit there would be unjust." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 80 cmt. c (1971).

The record is devoid of any evidence or allegation that the forum selection clause in the Distributorship Agreement is fundamentally unfair or unreasonable. Indeed, as noted above, Defendant has essentially acquiesced in the clause's binding effect, opting instead to train its fire on the presence or absence of a governing forum selection clause in its dispute with Powerscreen.[8] Therefore the Court finds that Defendant has voluntarily submitted itself to personal jurisdiction and venue in the Western District of Kentucky in its dispute with Terex.

IV.

Having determined that venue is proper in both cases, the Court need not consider Defendant's invocation of 28 U.S.C. § 1406. Thus, all that remains for the Court to consider is whether, despite the propriety of venue in the Western District of Kentucky, this Court should transfer both cases to the District of Arizona since their "center of gravity is in Arizona."

---

[8]Though Defendant did not do so, it might have argued that the exchange of purchase orders and invoices between Defendant and Terex somehow modified the terms of the Distributorship Agreement. Of course, for the same reasons discussed regarding Defendant's dispute with Powerscreen, the Court believes that this exchange resulted in, at most, a nullification of the forum selection provisions in both the purchase orders and the invoices, which in the Terex case leaves the Distributorship Agreement and the forum selection clause therein to govern.

13

Defendant's Replies at 6. The Court's review of the record in each case leaves it convinced that such a transfer would be inappropriate.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). When evaluating a motion to transfer pursuant to § 1404(a), "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of '"interests of justice."'" *Moses v. Business Card Express, Inc.*, 92 F.2d 1131, 1137 (6th Cir. 1991) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)).

A.

In support of its argument in favor of transfer, Defendant focuses almost exclusively on the "convenience of witness" language in § 1404(a). Defendant's Motions to Transfer Venue at 3–5. The Court finds this approach unpersuasive. The list of those witnesses is strikingly unsupportive of Defendant's assertion that transfer to the District of Arizona would be more convenient for them. Of the individuals identified in the parties' Rule 26 disclosures, four are located in Kentucky, one in Arizona, and twenty in neither state. The whereabouts of nine individuals are apparently unknown. Defendant has identified over 250 of its customers, many if not most of whom are located in Arizona, and some of whom may testify in support of Defendant's counterclaims against Terex and Powerscreen. But the Court suspects that relatively few of these customers will actually be called to testify in the case, making the volume listed less meaningful than it might seem at first blush. Quite simply, the Court believes that a

transfer to the District of Arizona would at best lead to an incremental net gain in convenience for non-party witnesses. Overall, therefore, considerations of convenience for the witnesses does not present a compelling case for transfer.

B.

Convenience considerations for the parties are at a minimum balanced, and likely tilt in favor of Terex and Powerscreen. *See, e.g., Steelcase*, 210 F.Supp.2d at 938 ("One of the most significant factors in considering whether venue should be transferred is the plaintiff's choice of forum" and giving greater weight to this factor where the plaintiff "has its principal place of business in [the chosen venue]" and where the chosen venue "has some connection to the underlying dispute"). A transfer to Arizona would simply shift the travel burden from Defendant to Plaintiffs, and though Defendant asserts that Plaintiffs' superior financial resources counsel in favor of transferring the case, it does not appear that Defendant would be financially incapable of litigating in the Western District of Kentucky. *Cf. id.* at 939.

Defendant also asserts that "the documents and records relative to [its] defenses and any counterclaim . . . are located in Arizona." Defendant's Motions at 2. However, no showing has been made indicating that the volume of these documents outweighs the volume of the documents Plaintiffs intend to use in their case, or that production of these documents in the Western District of Kentucky would be overly burdensome to Defendant. *Cf. id.* at 940–41.

C.

The "interest of justice" factor does not favor one side strongly over another. This Court likely is in the best position to apply Kentucky law, which will apply at least in part based on the forum selection clause it has found applicable to the Terex case and given Kentucky's significant interest in and relationship to the transactions upon which the Powerscreen case is based. *Breeding v. Massachusetts Indem. & Life Ins. Co.*, 633 S.W.2d 717, 719 (Ky. 1982). Additionally, considerations of judicial economy marginally favor the Western District of Kentucky, as pretrial proceedings have been conducted in this Court and any transfer would require yet another court to get "up to speed" on the issues in this case.

Overall, the Court finds that the factors above do not combine to favor transfer of this case to the District of Arizona. Therefore the Court declines to exercise its discretion under 28 U.S.C. § 1404(a) to transfer these cases. In addition, the Court will now consolidate these cases pursuant to the agreement of the parties that such consolidation would be appropriate.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motions to transfer venue in both of the cases captioned above are DENIED.

IT IS FURTHER ORDERED that Defendant's motions to consolidate the cases captioned above are SUSTAINED.

This is NOT a final order

cc:     Counsel of Record